MATILDA NELSON, ADMINISTRATRIX, v. THE LUMBERMAN'S MINING COMPANY.

*Negligence—Submission to jury—Appeal.*

Where the only *real* question open to consideration is whether there was evidence of negligence to go to the jury, the appellate court cannot *weigh* testimony or *criticise* witnesses, and if unable to see that it was not a case for the jury, and that they could not (legally) reach the conclusion they did, it cannot review the action of the circuit judge in refusing to grant a new trial, thus substituting its discretion for his; and there is no more power to review the damages than the other elements of decision.

Error to Menominee. (Grant, J.) Argued January 13, 1887. Decided April 14, 1887.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*B. J. Brown (D. H. Ball,* of counsel), for appellant.

*Hayden & Young,* for plaintiff.

CAMPBELL, C. J. Nels Nelson, plaintiff's husband, who died intestate, was fatally injured by falling ore in defendant's mine in Menominee county, on March 14, 1885, and died in a short time. It is claimed, and this suit is based on that claim, that the fall of the ore was caused by defects in the floor of small timbers or lagging, which received the ore as removed from the vein of ore above it, so that it fell through upon Nelson.

The mine is one of a comparatively soft ore, which requires to be timbered up as the ore is removed to prevent its caving or falling in. At the place where the accident happened, the vein was about 42 feet thick, and mining was going on in a room or space 21 feet wide, or thereabouts, and

42 feet high to the floor, on which work was going on.    All of this space was divided off into different cubical sets or sections, seven feet, as near as may be, in each direction and in height.    To build them up trenches were cut in the level horizontally across the vein seven feet apart, in which heavy foundation timbers were laid.    At each distance of seven feet timber pillars of great thickness are raised seven feet high, and timbers properly laid and framed across them ; this process being continued entirely across the vein, and, in the present case, in three parallel rows, and raised tier above tier, as the ore is mined out above, until here the height of six sets or 42 feet had been attained, and the mineral was being removed above that.    Across the top, and forming a floor, were laid poles or small timbers, lying close together with butts and points side by side, so as to leave no spaces between, the object being to have a substantially tight platform for the ore, which was not in large masses, but in lumps and small pieces, with more or less quite fine.    This ore, accumulating from time to time, was let down by raising the lagging poles, which were not fastened down, but merely laid across the supporting timbers, and allowing the stuff to fall through to the bottom of the room, which here was 42 feet down. After letting down sufficient ore for removal, the floor lagging was put back in place, and then the ore was removed from the bottom of the level where it had been dropped, by cars running upon tram-ways laid in the bottom sets, and loaded up by shoveling, and then removed to the pit shaft to be raised to the surface in large buckets or kibbles.    Nelson was employed in this tram work with some others.

On the day in question a dumping of ore had been made into the lower chambers before noon, and it was supposed the floor had been properly readjusted.    After dinner Nelson and the other trammers went into the chamber to load up the cars, and a sudden fall of about 150 pounds of ore came from

65 MICH.—19.

above, striking him mostly in the back and producing injuries of which he died.

The negligence imputed to defendant was in not having the flooring properly made so as to prevent ore from falling down. During the trial some testimony was gone into concerning the safety of using but a single floor, without some intervening shelter above the tram-way and the chambers in which the ore was dropped for removal. On the summing up, the court very fully, and, we think, very clearly, directed the jury that the method adopted in this mine, being entirely familiar to Nelson, was all that he could require, and that the inquiry must be limited to a consideration of the maintenance of this single flooring in safe and proper condition without culpable negligence.

The jury found specially that the injury was caused by a neglect of duty devolving on the mining captain in not having the lagging properly constructed and put in place so as to leave no defect or hole where sufficient ore could come through to kill a man by falling upon him.

The court had instructed the jury that defendant would not be liable for carelessness in the miners above in not properly restoring and adjusting the timbers after dropping the ore, and had cautioned them that the neglect must be that of the defendant's officers in not constructing the lagging as common prudence would require, and in leaving a defect or defects to exist after knowledge, or after such delay that knowledge ought to have been had. It is claimed by counsel that the language used might allow the jury to assume defendant would be liable for lack of diligence in seeing that the miners properly restored the floor to its place; but we do not think this is a correct inference from the charge.

We also, after a careful examination of the charge, cannot find that the court omitted to notice and charge upon the matters set forth in the special requests to charge.

The only real question that we can find open to considera-
tion is whether there was evidence of negligence to go to the
jury. The testimony for defendant is very strong and posi-
tive, and, if it were our function to pass upon the facts, I
should myself consider it more satisfactory than the some-
what inferential testimony to the contrary. But we cannot
weigh testimony or criticise witnesses. And we cannot say
there was no testimony which the jury had a right to accept
which tended to show defects in the flooring itself. It is not
for us to say it was exaggerated or unlikely.

There was testimony tending to show that the rush of ore
which came down on Nelson fell directly, and without noise,
which would hardly be avoided had it lodged on timbers
above and then come down. One piece was quite large, and
such as could not have come through a small opening. The
testimony was strong and uncontradicted that the miners
had not returned to the floor, thus negativing a very likely
cause of such a mishap in some one's raising or deranging
some of the floor poles. There was also testimony of uneven-
ness in the end fitting of some of the floor, as well as of a
considerable hole in the wall at the side of one of the
chambers. The location of this latter seems upon a compar-
ison to have been rather remote from the place of the acci-
dent, although the testimony, which was very unsatisfactorily
taken, would in some places bear a different construction.
There was enough shown, as we think, concerning the drop-
ping on more than one occasion of pieces which should not
have fallen through a sound and well-made floor to leave it
for the jury to say whether there could be any other con-
clusion than that which they drew. The case is not at all
satisfactory, and it is not at all clear that the verdict is right;
but we have not been able to see that there was not a case for
the jury, and that they could not reach the conclusion they
did.

If so, then, we cannot review the action of the circuit

judge in refusing to set it aside and grant a new trial. We cannot substitute our discretion for his. And we have no more power to review the damages than the other elements of decision. No fault is found with the charge on that subject, and the circuit judge has not thought proper to reduce them. We are compelled to affirm the judgment.

SHERWOOD and CHAMPLIN, JJ., concurred. MORSE, J., did not sit.