·JAMES HUGHES v. THE DETROIT, GRAND HAVEN & MIL-
WAUKEE RAILWAY COMPANY.

78 399
85 396

[See 65 Mich. 10.]

*Negligence—Pleading—Declaration—Practice in Supreme Court—
Trial—Verdict—Polling jury—Right of juror to make
statement—Denial of motion for new trial
—Not assignable as error.*

1. This case was not reversed on the former hearing (65 Mich. 10)
on the ground that evidence was received concerning the con-
dition of the yard in which the accident happened, and 'the
use of it as a place of pastime by children, nor was it held that
the error of the court in receiving such testimony was not
cured by its being afterwards withdrawn from the consider-
ation of the jury.

2. The appellate court does not concern itself with errors claimed
to have been committed against the non-appealing party.

3. A plaintiff has the right, at least, to *attempt* to try his case
upon his own theory, and to take such steps as are necessary
to afford a remedy in case he is not permitted to do so, and
the fact that his counsel knows that the trial court will not
permit certain qustions to be answered cannot affect his right
to *ask* them, or his good faith in so doing.

4.· In a suit by a boy for injuries received, when only five years
old, by being thrown under the wheels of defendant's engine,
while riding on the foot-board, in defendant's railroad-yard,
instructions to the jury that, in order to find a verdict for the
plaintiff, they must find by a preponderance of evidence,—

   *a*—That the boy was on the foot-board, and was seen by the
engineer, who, after seeing him there, started the engine with-
out ascertaining whether the boy had got off;—

   *b*—That the engineer was guilty of gross negligence;—

   *c*—That the boy, by reason of his insufficient intelligence, was
unable to comprehend the danger, and was not guilty of con-
tributory negligence,—

   Are not misleading or inconsistent, and sufficiently define the
gross negligence referred to.

5. Every presumption is in favor of the correctness of a verdict,
and when the jury is polled is the time for a juror to speak,

if he has anything to say against or in explanation of such verdict.

So *held*, where, after the announcement of a verdict for a plaintiff, defendant's counsel asked that the jury be polled, whereupon one of the jurors arose and attempted to address the court, but the clerk was directed to proceed with the polling of the jury, and the juror, in answer to the usual question, twice repeated, answered that it was his verdict, and after the court had discharged the jury from the further consideration of the case, but before they had left their seats, the juror again attempted to address the court, but was not allowed to speak, and, in answer to a request of defendant's counsel that the juror be heard, the court stated that the verdict had been taken in the proper way and the jury discharged, and if the juror had any explanation or complaint to make it was his duty to come and see the court, to which statement an exception was taken by defendant's counsel; which action of the court is sustained, it not appearing that the juror at any time stated that the verdict was not his, or of his own free will, or that he went to the judge with any complaint or explanation after the jury was discharged.

6. A motion for a new trial, with the accompanying affidavits, forms no part of the record, and are not brought up on writ of error (*Final v. Backus*, 18 Mich. 233); nor can error be assigned in a civil case upon a refusal to grant the motion. *Dibble v. Rogers*, 2 Mich. 404; *Cuddy v. Major*, 12 Id. 368; *Mining Co. v. Brady*, 14 Id. 263; *People v. Judge*, 20 Id. 222; *Jones v. Hobson*, 37 Id. 36; *Toulman v. Swain*, 47 Id. 85; *Nelson v. Mining Co.*, 65 Id. 288.

Error to Wayne. (Gartner, J.)    Argued October 30, 1889.    Decided December 28, 1889.

Negligence case.    Defendant brings error.    Affirmed. The facts are stated in the opinion.

*George Jerome* (*Otto Kirchner*, of counsel), for appellant, contended as stated in the opinion, and also:

1. A juror has a right to be heard either in explanation or correction of the verdict as announced by the foreman; citing *Horner v. Watson*, 6 Car. & P. 380; *Martin v. Morelock*, 32 Ill. 485; *Green v. Bliss*, 12 How. Pr. 433; *Blackley v. Sheldon*, 7 Johns. 34; *Fitzpatrick v. Himmelmann*, 48 Cal. 588; *Regina v. Vodden*, 22 Eng. Law & Eq. 596; *Breck v. Blanchard*, 27 N.

H. 100; *Stewart v. People,* 23 Mich. 77; *Farrell v. Hennesy,* **21** Wis. 632.

2. In support of the contention that it was error to refuse to grant the motion for a new trial, counsel cited *U. S. v. Reid,* 12 How. 361.

*S. E. Engle (Levi T. Griffin,* of counsel), for plaintiff, contended for the doctrine stated in the opinion.

MORSE, J. This case has been in this Court once before, and is reported in 65 Mich. 10 (31 N. W. Rep. 603).

The usual questions as to the negligence of plaintiff and defendant in cases of this kind are not found in this record. The defense objects to the charge of the court, contending that a different case was submitted to the jury than that alleged by the plaintiff in his declaration; also that it was inconsistent and misleading, but in what respect is not very clearly pointed out. No fault is found in the admission or rejection of testimony on the trial, nor is any of the evidence given in the record. We are asked to deal with supposed erroneous conduct of the attorneys for plaintiff sanctioned by the trial court, and also with alleged error in the proceeding attending the reception of the verdict of the jury.

It is also claimed that the declaration does not state a cause of action. We think that the objection to the declaration is a very technical one, and has. no merit. The counsel for defendant contends, first, that this Court held when the case was here before, and that the circuit court upon the last trial submitted the case upon that theory, that the plaintiff could not recover unless the jury found that he was standing upon the foot-board of the engine, and the engineer saw him there when he started the engine, and did not previously give him an opportunity to get off, and that the declaration has no

allegation to this effect, but proceeds upon the theory that the engineer and other agents of the defendant did not see plaintiff on the foot-board of the engine, whereas, if they had used reasonable care, they would have seen him there, and that their failure to thus see him was negligence.

Since the case was here before, there have been two trials, under an amended declaration, which the defendant's counsel admits attempted to allege that the engineer saw the boy upon the foot-board at the time of starting the engine; but he claims that the attempt was a failure, or, if the amendment can be construed to mean what it was intended to mean, it is so inconsistent with other portions of the declaration that it cannot stand. It seems, therefore, that the declaration has misled no one; the counsel for the defendant being aware what was meant and intended by the amendment, and the counsel for the plaintiff supposing all the time, and still insisting, that he stated in such amendment clearly enough what he intended to say. The record also fails to show that any question has ever been raised upon the sufficiency of this declaration in the court below, although it was amended soon after it was first in this Court, and there have been two trials since such amendment.

The declaration avers, among other things,—

"That it was the duty of the defendant and its said agents to see the said plaintiff when going and being on the premises aforesaid, and to warn him of the danger, and to order him off, and to compel him to go off, and avers that, by the exercise of ordinary care and diligence, they could have seen him when going and being on and about said premises and engines, and that he was in plain sight of them all; *and that they, the said engineer and other servants of defendant, did see the plaintiff while standing on the end of the step, at the time of and immediately before starting the engine as aforesaid, and saw*

*him on defendant's premises during* the whole time he was there as aforesaid preceding the injury, to wit, about six or eight minutes, and that it was their duty not to start the engine while he was standing on said step, or to so manage or so check the engine, and then immediately propel it forward as aforesaid, without looking to the front of it, and without ordering the plaintiff off, and allowing him to get off, but that said defendant, by the wrongful conduct, carelessness, and negligence of its said servants, took no notice whatever of the plaintiff's presence, and gave him no notice whatever of any danger, or to leave said premises, or to get off from said engine, but did wrongfully, negligently, and carelessly allow said plaintiff to go and be on said premises, and to ride upon the platform aforesaid, and to be thrown therefrom, and injured as aforesaid."

The portion in italics constitutes the amendment. If this does not clearly enough charge that the engineer saw the boy standing on the end of the step (foot-board) at the time of the starting of the engine, then I fail to understand the meaning of plain Anglo-Saxon words, nor do I find any inconsistency between this amendment and the balance of the declaration.

In relation to the objections made to the opening of the counsel for plaintiff the counsel for defendant claims that, when the case was here before, it was reversed, among other things, on the ground that evidence was received—

"Concerning the condition of the yard in which the accident happened, and the use of it as a place of pastime by children, and some similar matters;"—

And that it was held that the error of the court in receiving the testimony was not cured by its being afterwards ruled out and withdrawn from the consideration of the jury. In this the learned counsel is mistaken. This Conrt did not reverse the case on this ground, or hold as claimed by counsel. The only reference to this matter in the majority opinion by Chief Justice CAMPBELL is

when, in speaking of the allegations in the declaration, he says:

"Other facts were set up concerning the condition of the yard in which the accident happened, which ran from Hastings street across a block, and the use of it as a place of pastime by children, and some similar matters, all of which, although gone into on the trial, were finally ruled to be improper by the judge in his charge. This final ruling was in accordance with the decision of this Court in *Chicago & N. W. Ry. Co. v. Smith*, 46 Mich. 504, concerning such premises, where it was held, in a very similar case in all its circumstances, that the company could not be held, under such circumstances, for anything less than wanton and gross negligence, involving reckless misconduct."

The opening of plaintiff's counsel complained of is as follows: Mr. Engle stated that the injury for which recovery was sought happened in the railroad yard of the defendant at Detroit, and then proceeded to further state as follows:

"Along this back-yard and at the rear of their dwellings [meaning the dwelling of plaintiff's family, which was located at a point immediately adjacent to said yard] there were no fences whatever."

Thereupon defendant's counsel interrupted, and stated that he objected to the statement as immaterial and irrelevant. Plaintiff's counsel then further proceeded:·

"It cannot be objected to. We may describe the locality; we have a right to describe the locality of the premises. There was nothing to obstruct the view from where these witnesses were, down to and over the railroad grounds. We shall show that the little boy had seen children ride on that step, and on this occasion he tried it."

And thereupon the defendant's counsel further objected to the statement as irrelevant. And thereupon the court said:

"As far as that is concerned, I do not see how I can limit counsel in his opening. I cannot anticipate what he is going to say."

To which remark of the court defendant took an exception. And thereupon the plaintiff's counsel further stated:

"We propose to offer to prove upon what grounds we claim."

Thereupon the court stated

"You can go on and take your own chances on the opening;"—

To which ruling of the court the defendant excepted. And thereupon, subject to the objection and exception of the defendant's counsel, the plaintiff's counsel did continue his opening address to the jury, as follows:

"Our claim for damages in this case, in the first place, was $10,000. This case was tried, and went to the Supreme Court, and came back here for a new trial. We applied to this court—having known more about the case and understood its aspects—we applied to this court to allow us to amend our *ad damnum* clause in the declaration, to claim $20,000 instead of $10,000. Upon the hearing before the court, that application was allowed, and our claim in our declaration for this injury is now $20,000.

"I may state to you, gentlemen of the jury, that there are two or three other grounds of negligence upon which we claim, but I anticipate they may be excluded from you. We claim it was negligence in not fencing those grounds. We claim it was negligence in allowing children to make a play-ground of the track, and that it was a temptation to other children, and that they should have kept the plaintiff off the premises; and that there was a row of houses along there, and they should have kept the grounds fenced. The very building in which the family lived was owned by the railroad company. I believe the title to the property was in the name of one of its officers, but held for the benefit of the company. These matters may be excluded from your consideration. If they are, why, of course, you will not be troubled with them."

It is contended that plaintiff's counsel stated that he intended to prove these matters, when he knew that this

Court had ruled them out, for the express purpose of prejudicing the jury. The counsel for plaintiff insist that all this evidence proposed in the opening was proper in the case, and that they acted in good faith, and had the right, even in the face of the intimation of the majority opinion of this Court, to offer the evidence, and to save their points upon it, if ruled out by the circuit judge, to be used in this Court on error if the case went against the plaintiff in the court below. I think they had an undoubted right to show the locality of the accident and its surroundings, and that there was no fence between the place where the boy lived and the point where the injury occurred, and I know of no case in this State holding differently. But, in any event, they had the right to make the offer to show the condition of the locality, and to claim it was negligence in not fencing these grounds, and in allowing children to make a playground of it, and that other children were allowed to ride on these steps, and were seen so riding by plaintiff. The opinion of this Court, when the case was here before, was not binding in this respect. We do not concern ourselves, when a case comes here on error, with errors claimed to have been committed against the party who does not appeal. The case was brought up here the first time, as now, by the railway company, and the question whether the court below on the first trial erred or was correct in ruling out all this testimony was not involved or argued on that appeal. The plaintiff's counsel has a right to be heard on this question, before this Court, before it is irretrievably settled against his client, and he had the right to lay the foundation in the lower court for such hearing.

The counsel claims the right to show these things to establish the fact that the boy was not a trespasser upon the company grounds, and I, for one, am not now pre-

pared to say that he has not such right. In 46 Mich. 504 (9 N. W. Rep. 830), *supra,* the boy was a trespasser, and the engineer and fireman were on the lookout, and ordered him off and gave him time to get off, and thought he was off, when they started up the engine,—a state of facts materially different from this case. The court below seems to have acted upon the assumption that the boy was a trespasser, and had no right to be there, and therefore confined the recovery to a finding of gross negligence. It is very clear from our own authorities that if children were allowed to play on this yard, and permitted and invited to ride on the engine, the plaintiff was not a trespasser, and if he was not a trespasser it would make a vast difference in the rule of negligence to be applied to the case.

I find but one remark in the opening of counsel that can be said to have been objectionable, and that is that the building in which plaintiff lived was owned by the railway company, or that its title was in the name of one of its officers. This was not relevant or material to the issue, but it cannot be possibly said that this had any influence upon the verdict of the jury.

The remarks above made, as to the objections to the opening, will apply with equal force to the objections to the offering of proof on the part of plaintiff's counsel. The following questions were asked of one witness only, Rosa Busha, objected to as immaterial and irrelevant, and ruled out by the court under such objection:

"1. Will you state to the jury whether you have seen children before this accident, during the summer, riding upon the cars and engine, and on the foot-boards in front of the engine, and behind the engine?

"2. Will you state whether this same summer, and prior to the accident, the company had allowed children habitually to play tag, pitch pennies, and marbles all over these grounds?

"3. And whether you have seen children climb upon the cars, and on the ladders.

"4. Whether you have seen little boys and girls attempt to climb upon the step of the engine, and seen the fireman or engineer from the rear part of the cab reach out his hands and help them upon the step.

"5. You may state whether people pass a great deal over these grounds, and up and down Hastings street.

"6. With regard to the side of the street where the little boy went on, was there any barrier, any fence, or bar of any kind, to keep any one from going from the Hastings-street sidewalk onto the grounds of the railroad company?

"7. I will ask the same question particularly with reference to the condition of things immediately along the side of the brick building,—and that probably will be all we shall wish to ask on that,—whether there was any fence or barrier to prevent persons from going from the Hastings-street sidewalk onto the railroad company's grounds immediately south of the brick building, where the Hughes family lived."

These offers were in the same line of the opening, and I can see no good reason why the plaintiff had not the right to contend upon the trial below that these facts existed, and that if they did exist a greater and higher duty was imposed upon the defendant and its agents to look out and provide against accidents to such children. See *Keyser v. Railway Co.*, 56 Mich. 562 (23 N. W. Rep. 311); *Marcott v. Railroad Co.*, 47 Id. 8 (10 N. W. Rep. 53). But, in any event, he had the right to propound the question and take his exception, that he might bring the matters to the attention of this Court in case the verdict went against him in the court below; and there is no evidence of any want of good faith, or of any desire to prejudice the jury, in the asking of these questions. Only one witness was inquired of, and, after these questions were propounded and ruled out, no further attempts were made to bring the same matters in by other witnesses. Nor were any unnecessary questions

asked of the witness Rosa Busha, in view of the plaintiff's theory, which was set up in his declaration and insisted upon at the trial. That plaintiff's counsel knew that the trial court would not permit the questions to be answered could not affect his rights to ask them, or his good faith in so doing. He had the right, at least, to attempt to try the case upon his own theory, and to take such steps as were necessary to afford him a remedy in case he was not permitted to do so; and this Court certainly could not foreclose the case against him by a remark in an opinion when the case was here before, upon a question not involved or argued at that time before us. *Marcott v. Railroad Co.*, 47 Mich. 5.

When the plaintiff's mother was on the stand, a witness in his behalf, for the purpose of showing that plaintiff knew the danger of going upon the premises of the company, its counsel, upon cross-examination, drew out from her certain instructions that she had given the boy prior to the injury, which instructions are not set out in the record. Plaintiff's counsel, in answer to this, said:

"We suggest that, inasmuch as the counsel has drawn out our instructions to the little boy, we would like to show to the jury, and offer to show to the jury. that the conduct of the road in allowing the boys to be in and out of the premises, and to be on the foot-board, was such that we could not make our children mind us."

"*Defendant's counsel:* This proposition is not made in good faith, and I desire to enter my protest to this species of pettifogging.

"*The Court:* As far as that last remark is concerned, it is entirely uncalled for. I suppose the ground of this examination was to form a basis of a request to charge that contributory negligence of the parents would be contributory negligence of the boy, and for that reason I admitted the testimony, although I am not certain as to what the law is on that question. As far as the proposition of Mr. Griffin is concerned, he is entitled to have that proposition placed upon the record. I shall exclude

·it, and give him an exception; but he certainly has a right to have that upon the record.

"*Defendant's counsel:* Your honor will bear with me a moment. I respectfully submit he has not a right to make such a proposition. It has been made repeatedly during this trial, and your honor has as often ruled it out, and it is not made in good faith, may it please your honor. It is for the purpose of bringing before this jury matter that does not belong there, and I desire to have an objection and an exception.

"*The Court:* You are entitled to your exception, and I will give you an exception. As far as the remark is concerned that you made a moment ago, I think it was entirely uncalled for, because, under the circumstances, Mr. Griffin would certainly have a right to have that upon record, in view of the claim on the cross-examination of the boy's mother. I shall give Mr. Griffin an exception to that proposition, and you can have an exception to the remark, Mr. Kirchner."

Error is assigned upon the remarks of the court. I am satisfied that the court was entirely right, and that the counsel for defendant was at fault in charging the counsel upon the other side with "pettifogging."

There is nothing misleading or inconsistent in the charge of the court. If anything, it was too favorable to the defendant. The circuit judge instructed the jury that they must, in order to—

"Find a verdict for the plaintiff, be satisfied, by a preponderance of evidence—

"1. That the boy was on the foot-board of the engine.

"2. That the engineer did see him upon the foot-board.

"3. That the engineer, after seeing the lad upon the foot-board, started the engine without ascertaining whether the lad had got off.

"4. That the engineer was guilty of gross negligence.

"5. That the plaintiff, by reason of his insufficient intelligence, was unable to comprehend the danger, and was not guilty of contributory negligence.

"6. In order to find for the plaintiff, you will have to find affirmatively upon each and every of those proposi-

tions. If you do not so find, your verdict will have to be for the defendant."

What was gross negligence was clearly and sufficiently defined to the jury.

The last error assigned is that the court erred in refusing to permit Mr. Wesch, one of the jurors, to make a statement. To fully understand this question, it will be necessary to quote largely from the proceedings in the taking of the verdict. The jury retired, and, after being absent for a time, at 8 o'clock P. M. the court directed that the jury be brought into the court-room:

"*The Court:* Gentlemen of the jury, I understand that you have not been able to agree?

"*The Foreman:* No, sir.

"*The Court:* Is there any likelihood of your agreeing?

"*The Foreman:* I do not think there is.

"*The Court:* The case has taken some time, has been on trial during the entire week, and I think I will let you try again.

"*Juror Shields:* There has been an intimation, your honor—

"*The Court*: I do not care about any argument, Mr. Shields. The officer will take the jury into their room again."

At 6:58 A. M., January 19, 1889, the jury returned a verdict in favor of the plaintiff for $8,750. Defendant's counsel asked that the jury be polled. Mr. Wesch, one of the jurors, stood up, and attempted to address the court.

"*The Court:* The clerk will proceed with the polling of the jury.

"*The Clerk:* James Daly, was this your verdict, and is this your verdict?"

Mr. Daly answered, "Yes," as did all the other jurors, when the same question was put to them. When Juror Wesch was reached, the clerk said:

"George W. Wesch, was this your verdict, and is this your verdict?

"*Mr. Wesch:* Yes.
"*The Clerk:* Do you say, 'Yes?'
"*Mr. Wesch:* Yes."

When the last juror interrogated, Mr. Shuman, answered, "Yes," the following proceeding immediately followed:

"*The Court:* Gentlemen of the jury, you are discharged from the further consideration of this case, and I may say at this time that I regret very much being obliged to keep you out all night, but I endeavored to make things as comfortable as possible, and it has not only been an inconvenience to you, but also to me.

"*Mr. Wesch:* Your honor, I would like to say—

"*The Court:* Never mind that now.

"*Mr. Wesch:* I just want to say a word.

"*The Court:* I say, gentlemen, it has not only been an inconvenience to you, but also to me.   It is the first occasion on which I have kept a jury out all night, but in view of the fact that this case was tried last spring, the trial lasting several days, and in view of the fact that we have been trying it during the entire week, and that it has been an enormous expense to the county, I did not feel justified, under the circumstances, in adopting any other course than was adopted.   Under the circumstances, gentlemen of the jury, you need not report here until next Monday afternoon at two o'clock.

"*Defendant's Counsel:* May it please your honor, if there is a juror here who desires to say anything, I think he has a right to be heard.

"*The Court:* If there is such a juror here, he can come and see the court.

"*Defendant's Counsel:* If there is such a juror here, undoubtedly he can come and see your honor, but, if any juror has been compelled to give a verdict contrary to his own convictions, he has a right to so state it.

"*The Court:* The verdict has been taken in the proper way, and if the juror has any explanation or complaint to make it is his duty to come and see me.   The verdict has been rendered, and the jury have been discharged.

"*Defendant's Counsel:* I take an exception to your honor's ruling."

It will be noticed that at no time did the juror state

that the verdict was not his, or of his own free will; nor is it shown that he went to the judge with any complaint or explanation after the jury was discharged. It is claimed on the argument here by defendant's counsel that the juror attempted to speak three times, and was not permitted to do so before the jury were discharged and that he had a right to be heard in explanation or in correction of the verdict as announced by the foreman; and he assumes that Wesch attempted to speak for such explanation or correction. His right to do so is not denied, and is undoubted. But every presumption is in favor of the correctness of the verdict, and the question is, is there anything upon this record to show that Wesch wished to explain the verdict or to correct it, or anything to show that the trial judge was made acquainted with such desire on the part of Wesch or had any reasonable ground to believe that this was why Wesch wished to speak, at any time before the jury was discharged? An examination of the proceedings will show that there is not, but that, on the contrary, it appears from his conduct that he was satisfied with the verdict. When the poll of the jury was demanded Wesch stood up and attempted to address the court. We are are not advised by the record that he said a word, or that the court heard him say anything, or saw him standing up. The record simply shows that the court said: "The clerk will proceed with the polling of the jury." When Mr. Wesch's name was called, and he was asked not only if this verdict was his verdict, but, "*Is* this your verdict," then was his time to speak, if he had anything to say against the verdict, or in explanation of it. He then had the opportunity, which would not have been denied to him had he taken advantage of it. But, no; he deliberately answers twice that it was his verdict, and is his verdict. In the face of this conduct of the juror,

can it be said from the record that he arose at any time to complain of the verdict, or to say that he had been coerced into it, as claimed by defendant's counsel, or that the judge had the slightest intimation until the counsel spoke that such was Wesch's object in attempting to speak? I think not. Mr. Wesch, when he made his next attempt to speak, broke in upon the remarks of the court, and after the court had stated that the jury was discharged, and there was nothing about his desire to "say a word" that would give any one, after he had agreed to the verdict upon the poll, an intimation or hint that he then wanted to attack the verdict, to the correctness of which he had but the moment before twice solemnly certified. And we have no evidence before us tending to show that such was his object, except his own affidavit filed subsequently upon a motion for a new trial, which affidavit we cannot consider here. It is assigned as error that this motion for a new trial was denied; but we have held, over and over again, that error cannot be assigned on this ground in a civil case. *Toulman v. Swain*, 47 Mich. 85 (10 N. W. Rep. 117); *Jones v. Hobson*, 37 Id. 36; *People v. Judge*, 20 Id. 222; *Nelson v. Mining Co.*, 65 Id. 288 (32 N. W. Rep. 438); *Mining Co. v. Brady*, 14 Id. 263; *Cuddy v. Major*, 12 Id. 368; *Dibble v. Rogers*, 2 Id. 404; *Final v. Backus*, 18 Id. 218. And the motion, including the affidavit of the juror Wesch, form no part of the record, and are not brought up on writ of error. *Final v. Backus*, 18 Mich. 233. And upon *mandamus* we refused to issue an order directing Judge Gartner, who tried the case in the court below, to grant a new trial upon the presentation of ˙ the same reasons to us that are now urged before us. The judgment must be affirmed, with costs.

SHERWOOD, C. J., and CHAMPLIN, J., concurred with MORSE, J.

CAMPBELL, J. I agree in affirming the judgment, but I do not think it was right to refuse the juror an opportunity to explain. As it appears that he coincided in the verdict, there was no harm done. In concurring in affirmance, I do so only on the errors assigned, with no suggestions beyond them.

LONG, J., did not sit.