HINTZ v. MICHIGAN CENTRAL RAILROAD CO.

| 132 | 305 |
|-----|-----|
| 141 | ³161 |
| 132 | 305 |
| 143 | ⁴137 |
| 143 | ⁴165 |
| 143 | ³167 |
| 132 | 305 |
| 145 | 267 |
| 132 | 305 |
| 146 | ³156 |
| 132 | 305 |
| 148 | ⁴459 |
| 132 | 305 |
| 154 | ³376 |
| 154 | ³626 |

1. RAILROADS — NEGLIGENT INJURIES AT CROSSING — STATUTORY SIGNALS—QUESTIONS FOR JURY.

The testimony of the plaintiff, under the circumstances of this case, that defendant's train struck the wagon in which she and her husband were crossing defendant's tracks in the highway, causing the team to run away, whereby she was injured, and that they stopped, looked, and listened before crossing the tracks, and heard nothing, made a proper case for the jury.

2. APPEAL—NEW TRIAL—TRIAL BY JURY.

The Supreme Court has no power to enter a verdict contrary to the finding of a jury, but it may, under 3 Comp. Laws, § 10504, reverse the decision of the circuit judge denying a motion for a new trial; such action is not contrary to the constitutional provision securing the right to a trial by a jury, as it gives the party a right to a new trial by another jury.

3. SAME—PRESUMPTIONS—DECISION OF TRIAL COURT.

In determining whether a trial court should have granted a new trial, the Supreme Court will bring to the support of his decision all reasonable presumptions which arise from his superior opportunity to determine the credibility of witnesses.

4. SAME—PREPONDERANCE OF EVIDENCE.

When it is apparent from the record, notwithstanding the presumptions in favor of the decision of the trial judge, that he erred in refusing to grant a new trial on the ground that the verdict was against the weight of the evidence, his decision will be reversed.

5. SAME—INJURIES AT RAILROAD CROSSING.

In an action against a railroad company, plaintiff was the only witness who testified that the runaway of her team was caused by a collision with defendant's train; the trainmen testified that there was no collision, and several people residing near the crossing testified that her team ran away before reaching the crossing,—one that the train passed the crossing several minutes before the runaway. *Held*, that a verdict for plaintiff should be set aside as against the weight of the evidence.

132 MICH.—20.

Error to Saginaw; Snow, J. Submitted January 13, 1903. (Docket No. 22.) Decided February 17, 1903.

Case by Anna Hintz against the Michigan Central Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Watts S. Humphrey*, for appellant.
*Rowland Connor*, for appellee.

CARPENTER, J. Plaintiff obtained a verdict and judgment in the court below for damages resulting from the alleged negligence of defendant. Defendant seeks a reversal of that judgment on three grounds: *First*, that there was no evidence from which the jury could find that the defendant was negligent; *second*, that the evidence conclusively established plaintiff's negligence; *third*, that the trial judge improperly denied defendant's motion to set aside the verdict on the ground that the same was against the weight and preponderance of the testimony.

The testimony introduced on the part of the plaintiff tended to prove that while crossing defendant's track, driving in an easterly direction, on Davenport street, in the city of Saginaw, defendant's regular passenger train collided with the vehicle in which plaintiff was riding with her husband, and as a result the horses drawing said vehicle ran away, the vehicle capsized, plaintiff's husband was killed, and she herself badly injured. On the other hand, the testimony of the defendant tended to prove that no collision whatever occurred between its train and the vehicle in which plaintiff was riding; that plaintiff's injuries were due to being thrown from the vehicle in consequence of the horses' running away; that the horses commenced running away before they reached defendant's track; and that they passed over said track after the train with which it is alleged the vehicle collided.

We are all agreed that the testimony introduced on the part of the plaintiff made a proper case for the jury. It

may be inferred from her testimony that the employés of
defendant in charge of the train in question did not give
the statutory signals as said train approached the crossing,
and that plaintiff and her husband stopped, looked, and
listened before attempting to cross defendant's track.

The serious question in the case is raised by defendant's
third ground for reversal.   Is the verdict so clearly against
the weight and preponderance of the testimony that it is
our duty to overrule the decision of the trial judge, who
said he was "satisfied the verdict is not against the
weight of the evidence ?"   The right of this court to over-
rule that decision is challenged by plaintiff's counsel.   It
is urged by him that such an "interpretation of this
statute [3 Comp. Laws, § 10504] would overthrow a
fundamental and established theory of the purpose and
scope of the Supreme Court."   It is to be assumed that by
this is meant that to set aside the verdict of a jury on the
ground that the same is against the weight of the evidence
is an invasion of the constitutional provision securing trial
by jury.   This contention, in our judgment, would be
unanswerable, if this court did anything more than to set
aside the verdict.   If, for instance, this court should
undertake to enter a verdict contrary to the finding of the
jury, or if it should refuse to submit the case to the decis-
ion of another jury, it would assume to decide facts which
the Constitution of the State says shall be decided by a
jury.   This court, however, does not, under the statute in
question, undertake to do anything more than the judge
presiding in the trial court has done for generations.
Before this statute was enacted, this court, on repeated
occasions, decided that it had no power to review such
decisions of the trial judge.   *Hake* v. *Buell*, 50 Mich. 89
(14 N. W. 710); *Nelson* v. *Mining Co.*, 65 Mich. 288 (32
N. W. 438); *Detroit Tug & Wrecking Co.* v. *Wayne
Circuit Judge*, 75 Mich. 360, 371 (42 N. W. 968), and
cases there cited; *Moore* v. *Daiber*, 92 Mich. 402 (52 N.
W. 742); *Brassel* v. *Railway Co.*, 101 Mich., at page 13
(59 N. W. 426).   The statute gives that power, and this

court would disregard an obvious duty if it did not, in a proper case, exercise it. In exercising it, we are bound to recognize the principles which have always governed trial courts in determining whether or not verdicts should be set aside. We are also bound to bring to the support of the decision of the trial judge all reasonable presumptions which arise from his superior opportunity to determine the credibility of witnesses. When, however, in accordance with these principles, it is apparent from the record, notwithstanding every reasonable presumption in support of his decision, that the trial judge erred in refusing to set aside the verdict on the ground that it is against the weight of the testimony, the duty of this court to overrule that decision is manifest. *Whipple* v. *Railroad Co.*, 130 Mich. 460 (90 N. W. 287); *Baldwin* v. *Railway Co.*, 128 Mich. 417 (87 N. W. 380); *Cole* v. *Railway, ante*, 122 (92 N. W. 935).

With this understanding of our power and duty, let us consider the testimony in this case. The only witness whose testimony supports plaintiff's claim of the manner in which her injury occurred is the plaintiff herself. It is claimed that a Mr. Henry Hunt, whose testimony was introduced by the plaintiff, gave testimony tending to support her theory; but a careful examination of the record compels us to reach another conclusion. Mr. Hunt testifies that, just before the train crossed Davenport street, he saw a vehicle standing close by the track, and that, after the train had gone, he did not see this vehicle. This testimony seems to us colorless. On the other hand, Mr. and Mrs. Samuel Pigeon, who lived on Davenport street, west of the Michigan Central crossing, testified that they saw the team drawing the vehicle in which plaintiff was riding running away before they reached defendant's tracks, and that some of the articles in the wagon were thrown therefrom west of said crossing. Mr. Duff Pigeon, a brother of Samuel Pigeon, and who resided with him, testified that, as he came out of the house, he noticed something across the road, which proved to be a basket of

quilts and bags thrown from the wagon of plaintiff's husband; that he was then told of the injury to plaintiff and her husband, and immediately went on east, and found them where they were thrown from the vehicle. John A. Rooker, a neighbor of the Pigeons, testified that, after hearing of the injury to plaintiff and her husband, he went where they were lying, and helped to put them into the wagon which carried them to the hospital; that he afterwards returned along Davenport street, and picked up the articles thrown from the wagon during the runaway; that he found some of these articles west of the Michigan Central crossing. Matilda Patterson, with whom the last witness boarded, and who also lived on Davenport street, west of the Michigan Central crossing, testified that the articles thrown from plaintiff's wagon were stored in her house, and were found west of the Michigan Central crossing. Sadie Beuthin testified that she was visiting her mother, who lived on Davenport street, a short distance (it could not have exceeded 300 feet) east of the Michigan Central crossing; that, after the train which it is claimed collided with the vehicle in which plaintiff was riding crossed Davenport street, she got ready and started to visit a friend who lived near the Johnson-street bridge, which is located about 1,200 feet east of said Michigan Central crossing; that, when she got near the bridge, a team of horses running away passed her; that she visited her friend, and then went to the place where plaintiff and her husband lay in the road; and that she reached that place about 30 minutes after the train had crossed Davenport street. The conductor, fireman, and engineer on defendant's train which it is alleged collided with plaintiff's vehicle all testified that no such collision occurred. The testimony of plaintiff proves that articles like those found west of the Michigan Central crossing were in the vehicle, and that they were lost on this occasion.

While there are inaccuracies and discrepancies in the testimony of some of defendant's witnesses which justly

subject their testimony to criticism, it cannot be doubted that a runaway commencing west of the Michigan Central track occurred about the time of plaintiff's injury. Indeed, so convincing is this testimony that plaintiff's counsel concedes that such a runaway occurred, but he insists that that was a different runaway from the one in which plaintiff received her injury. He asks us to believe, and it is to be presumed that he asked the jury to believe, and that they did believe, that the runaway commencing west of the Michigan Central track, evidenced by these articles scattered along the street, which led up to the place where plaintiff and her husband were lying, was not the runaway which led to plaintiff's injury. He asks too much. To believe this, without any testimony tending to prove it, is too great a tax on our credulity, or, as we believe, on the credulity of any fair-minded person. Plaintiff's counsel also insists that there is nothing in the testimony of Sadie Beuthin inconsistent with his client's theory; "that she had no clock in the house, and that all her references to time were the purest kind of guesswork." We agree that her estimate of time is entitled to very little credit; but if, after hearing the train pass, she walked the distance she states before the runaway team overtook her, the inference that the team crossed the railroad track after the train passed is almost irresistible. That a jury should credit the testimony of an interested party, contradicted by this multitude of witnesses, and by the facts which it is conceded their testimony proves, naturally shocks the ordinary, fair-minded person. It is not to be presumed that another jury will reach the same conclusion.

Judgment reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.