141    153
144    ²394

NESTLE *v.* CITY OF FLINT.

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—PERSONAL INJURY—NOTICE OF CLAIM.

A notice of claim for injuries from a defective sidewalk at a point near the lot line between two lots on a certain street examined, and *held*, sufficient to support recovery.

2. HIGHWAYS AND STREETS—DEFECTIVE SIDEWALKS—NOTICE OF DEFECTS.

Where the general condition of a sidewalk is the same all along a certain block, and an injury occurs near a lot line, the defective condition of the walk in front of the lot adjoining that in front of which the injury occurred, may be considered by the jury on the issue of constructive notice of the defect, though the charter of the city requires each abutting owner to build his own walk and in effect makes the walk in front of each lot a unit.

3. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT—DISCRETIONARY RULINGS.

The refusal of the trial judge to set aside the verdict as against the weight of the evidence and for excessiveness of verdict will not be interfered with by this court unless, from a reading of the record, his duty to grant the motion is manifest.

Error to Genesee; Wisner, J. Submitted May 5, 1905. (Docket No. 211.) Decided July 24, 1905.

Case by Anna D. Nestle against the city of Flint for

personal injuries.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*James S. Parker* and *Mark W. Stevens* (*W. S. Rundell*, of counsel), for appellant.

*Brown & Farley*, for appellee.

OSTRANDER, J.   A judgment was obtained against the city of Flint for injuries claimed to have been received January 2, 1902, by reason of a defective sidewalk.   Notice of the injury, and of plaintiff's claim based thereon, was given to the city.   The notice stated that the injury was caused by—

"A defective sidewalk on the south side of Fifth avenue, just east and off from Saginaw street, said accident happening on west line of lot occupied by a Mr. Gale, the street number of such house being 508, and on or near the east line of the residence occupied by A. A. Riker, whose street number on Saginaw street is 724.   *   *   * My right foot was caught by a plank or board that was tipped up in said walk.   *   *   * That such sidewalk at such time where I fell was out of repair, and had been unsafe and notoriously bad for travel or for reasonable use, and had been so for a long time."

With considerable particularity, the notice described the injuries claimed to have resulted from the fall plaintiff had.   It is argued here, as it was below, that the notice is insufficient.   The objection made to the trial court was that "the claim is not broad enough to support the declaration, nor broad enough to support the proofs taken upon the former trial.   The claim is insufficient." The objection was overruled, and an exception taken. We do not know what the proofs referred to were, but are of opinion that the notice fairly served the purpose for which such a notice is required, and discover no variance between the statements in the notice and declaration.

To an understanding of the questions presented, a brief statement of the facts existing at the time of the injury is necessary.   The property lying along the south side of

Fifth avenue, east of Saginaw street, in the city of Flint, is known as "Lot 5." It was owned and occupied by two persons; Mr. Riker owning the west 82 feet, and Mr. Gale the east 50 feet. A sidewalk, made of stringers and plank, was in front of the lot on Fifth avenue, and extended across the block. In August, 1901, the sidewalk inspector examined this walk. He condemned the walk upon or in front of the Riker property, reported his action to the common council, and on August 31, 1901, served upon Riker notice to build a new walk. At the time of the alleged injury, in the following January, no new walk had been built. This inspector testified that he found no defects in the Gale walk, nor for six feet east of the east Gale line, requiring repairs. Counsel for plaintiff say that the case was tried upon the theory that plaintiff stepped upon a loose board in the walk at a point at or near the line between the premises occupied by Mr. Gale and Mr. Riker on Fifth avenue; that "there was no attempt made on the part of plaintiff to show that the city had actual notice that the board in the walk which caused the injury to plaintiff was out of repair before the accident to plaintiff, but the general condition of the walk in that vicinity was shown, for the purpose of proving constructive notice to the city."

The theory of counsel for plaintiff was in part embodied in a request to charge which the court gave, and which is here set out:

"*Sixth.* Upon the question of constructive notice, it is competent for the jury to consider the general condition of the walk in the vicinity of the place where the injury is alleged to have occurred, which in this case is limited to lot 5, or the premises occupied by Mr. Riker and Mr. Gale, and even if the walk at the exact place where the injury is alleged to have occurred was not apparently defective upon casual observation, yet if the walk in the vicinity was old, decayed, and some loose boards and rotten pieces of stringers, then the general condition of the walk in that vicinity might be considered as bearing upon the question of notice to the city of the defects complained

of; that is, the defect at the spot next to the tree where the plaintiff claimed she fell. I add that."

The testimony of the plaintiff, who was the first witness called, fixed the place where she fell, as we understand the record, at a point near or at the line dividing the property of Mr. Gale and Mr. Riker. A plat used upon the trial is not before us, which fact renders some of the testimony elicited upon the subject of no value or meaning to us. It seems to have been conceded that at the time of the injury each owner of property was required to build the sidewalk adjoining his premises. The plaintiff testified:

"I caught my right foot in the board, and it threw me backwards. * * * When I regained consciousness I saw there was a hole. I pulled the board aside as I crept towards the tree with my left hand. My right arm was stunned. I was unable to help myself along at all. As I was using my left hand, where the board had been placed, it seemed as if the stringer, as I pressed on it, went down. There wasn't much of it at all. It broke away from under my hand when I had my hand on it looking for my purse. I dropped my purse and hand bag. I couldn't find them at first, but by feeling down I found my purse was over near where—near the board. I had not noticed the board before that. I moved the board aside after I had tripped on it—the same board that flew out from under me. I moved it off my feet towards the south. When I first discovered the board, it was across my skirts and across my left foot. I had to remove it in order to get up. There was quite a deep hole down from where the board had flew out from under."

On cross-examination she testified:

"Q. As you walked along over that walk, you saw nothing ahead of you looked bad?

"A. No; I supposed I had crossed the dangerous part.

"Q. You were looking, and you saw nothing in the appearance of the walk that indicated to you that it was bad or dangerous, did you?

"A. No, sir; I didn't see nothing was wrong with that particular, not a thing.

"Q. The boards seemed to be in place?

" *A.* Everything seemed to be in place.

" *Q.* There was none loose in sight?

" *A.* I didn't see any.

" *Q.* Planks were level over there?

" *A.* Seemed to be all smooth.

" *Q.* Wasn't anything there that anybody passing along could see out of repair or wrong?

" *A.* No, sir; I didn't see anything wrong.

" *Q.* When you was passing over it in December you didn't see anything in that place along there in front of Gale's, that was wrong?

" *A.* I didn't notice anything.

" *Q.* You did notice this here in December (indicating on plat in front of Riker's property on Fifth avenue)?

" *A.* I noticed that after I left Saginaw street.

" *Q.* But up along in front of Gale's, along in here (indicating near the tree), when you were over it in December, you didn't notice anything wrong?

" *A.* I didn't take any particular notice of it. There might have been, but I didn't see anything broken.

" *Q.* Nothing there to attract your attention, was there?

" *A.* No; when I was over this walk in December (indicating on map, in front of Gale's property, near the tree) I didn't notice anything wrong with the walk.

" *Q.* Looked safe, didn't it?

" *A.* Looked safe as far as I could see.

" *Q.* If there was anything about it that was unsafe at the place where you fell, it was hidden, and you could not see it?

" *A.* I didn't see it.

" *Q.* A person walking along would not see it, would they?

" *A.* No, sir; if their mind was on the sidewalk, I don't know whether they could or not. The boards seemed to be all right as far as I could see. I didn't see the boards loose. I caught my toe in the board, and it threw me up."

Counsel for plaintiff introduced testimony to show the condition of the sidewalk in front of the Riker premises. It was objected to, and, following the objection, considerable was said by counsel and by the court, the point and substance of which is best evidenced ' ʳ excerpts from the record:

"*Mr. Stevens:* I have no objection to their showing that this walk was defective at the particular place where the injury occurred. I have no objection to showing the actual notice to the city, if they can.

"*The Court:* It doesn't seem to me the *Thomas Case* [123 Mich. 10 (47 L. R. A. 499)] interferes with your showing the condition of the walk in the immediate vicin-.ity of the accident upon the question of notice. But I am satisfied of one thing. Of course, it would be conceded that, under your system of building walks in the city of Flint, each abutting owner builds the walk, at least that was the condition at the time of the happening of this accident, and, that being the case, the piece of walk in front of each particular lot being an individual walk, I think you would be confined to that particular piece of walk abutting the premises of each individual owner. Each piece between each lot stands entirely by itself under our system of building.

"*Mr. Farley:* If it should develop that the walk in front of these two was built the same time, and that the two lots were owned by the same individual at one time, would that change the rule ?

"*The Court:* It don't seem to me that it would.

"*Mr. Brown:* Would that change the rule of attaching the responsibility to the city ?

"*The Court:* Not its responsibility. Of course, before this could be determined, unless I had it conceded, it would have to appear in the case what the system in this city was with respect to the building of sidewalks.

"*Mr. Parker:* The rule has applied that each abutting property owner is required to build the piece of walk directly in front of his own premises.

"*The Court:* I know that, but I cannot. take judicial notice of it.

"*Mr. Brown:* I can't see why that would be determining, even though that would be the rule covering the construction of sidewalks, for the reason that the city would be liable in any event.

"*The Court:* Unquestionably; but the point that I think would be decisive of that is this :. That each one of these walks was independent. One may be built this year and another may be built next year. There may be 10 years' difference in the age of a piece of walk in five rods.

"*Mr. Brown:* If that were true, and they were' defective—both of them—it would not matter, even though they

were built 10 or 20 years apart, for the reason that liability would exist against the city just the same, and the property owners are not held responsible.   It is the city that is to keep them and maintain the walks.

" *The Court:* I understand that.   I am simply speaking of the question of notice—whether you can say that a city has notice of the defective condition of the piece of walk which is an independent walk, by reason of defects existing near A.'s walk which is an entirely independent walk.

" *Mr. Brown:* I don't see where the doctrine would be any different than generally laid down by the courts.   ·

" *The Court:* The proposition I speak of has never been before the court.

" *Mr. Brown:* But why that should be the rule I can't see, for the city would be liable in any event for a defective sidewalk—would not make any difference whether on A.'s or B.'s walk.   If they were both defective, or if either of them were defective, that would be a matter of evidence. If either of them were defective, or both of them, it would be an equal liability of both of them against the city.

" *The Court:* You don't seem to get what I wish to convey.   Solely on the question of notice, why should the city have constructive notice of the defects existing in B.'s walk, because it was found that there were defects which were patent in A.'s walk ?

"*Mr. Brown:* That is probably true, without it is connected with the same part of the same walk.

" *The Court:* Walks of necessity are continuous along the streets, except for street intersections; but yet they are divided up according to the ownership of the block. There may be across one block 20 years' difference in the age of walks.

" *Mr. Brown:* I never have found any distinction among the cases.

" *The Court:* I never have seen them myself.   I don't know that there is any case; but it looks to me as if that ought to have something to do with it.   Of course, I don't know what the condition is here.   I have forgotten the very last word of what occurred on the trial, because we have had two or three cases.   *   *   *

" *Mr. Farley:* I can't see, if the court please, where the declaration counts upon an injury upon a defective walk at or near a line between two walks, the division of these walks having been defective for a considerable space of time,

and the evidence discloses that fact, I can't see any reason why the general defective condition on either lot would not be notice to the city, which would require them to put the walk in a reasonably safe condition.

"*The Court:* Suppose, in maintaining the case, plaintiff's testimony is that the accident occurred on a certain lot?

"*Mr. Farley:* We don't know whose lot. The testimony so far don't show.     *     *     *

"*The Court:* I think I will permit the taking of the testimony, and later on, if it should appear definitely, I will so instruct the jury, if they find this accident occurred in front of a certain lot, and in a sidewalk in front of that particular subdivision there were no patent defects, that it would not be notice to the city."

Thereafter considerable testimony was taken tending to prove that the sidewalk in front of the Riker property was at the time of the injury, and for a long time had had been, in an unsafe condition. When plaintiff's case was rested, counsel for defendant, calling the attention of the court to the provisions of the charter of the city of Flint, which place upon lot owners the duty to construct and maintain sidewalks, moved to strike out the testimony relating to the condition of the Riker sidewalk. This was refused.

It is a matter of common knowledge that a new or a good and safe board and stringer sidewalk sometimes marks the boundaries of a particular lot, and is continued, in front of adjoining premises, by a defective sidewalk. If an injury occurs from an alleged defect in the new and apparently sound sidewalk, it might well be said that constructive notice of the particular defect could not be shown by proof of the general, patent, and continuing defects in the adjoining walk. In a given case, the city might even have admitted notice of the condition of the defective walk by ordering it to be replaced, and still have had no notice or knowledge sufficient to create liability, under the statute, to one injured upon a continuation of the sidewalk.

A careful reading of the record discloses that the case

supposed is not the case at bar, that there was testimony tending to show that the particular defect had been a long-standing one, that the particular plank had been found removed and lying at the side of the walk, and that the admitted condition of the sidewalk west of the point where the injury occurred continued to and beyond that point. This being so, and there being some uncertainty about the precise place of the accident, we are of opinion that the court committed no error in leaving the whole matter to the jury.

In the same way and for the same reasons we should, we think, dispose of another contention. It is stated by counsel for appellant in the following language:

" The defendant does not make the claim that the stringers under the planks near and at the location of the tree referred to as the westerly [tree where plaintiff claimed to have fallen], were not defective; but it does claim that such defect in the stringers was a latent defect, and that the defendant city could not be held liable in the absence of actual knowledge of such defect."

We are of opinion, also, that the charge to the jury was sufficiently favorable to defendant, and that for none of the alleged errors occurring at the trial should the judgment be reversed.

The jury were limited in estimating damages to an allowance for pain and suffering of the plaintiff to the time of the trial, plus the cost of medical attendance and expenses for nursing and care. The verdict was for the sum of $3,300, and was followed by a judgment for that amount. It is claimed that the trial judge improperly denied defendant's motion to set aside the verdict and grant a new trial, because as to liability of defendant the verdict was against the weight of the evidence, and because the damages found were excessive. The case is one in which much might be said in support of both the reasons asserted. Testing the duty of this court in the premises by the rules laid down in *Hintz* v. *Railroad*

141 MICH.—11.

*Co.,* 132 Mich. 307, 308, we conclude that the determination of the trial court should not be disturbed.

The judgment is therefore affirmed.

MOORE, C. J., and CARPENTER, McALVAY, and HOOKER, JJ., concurred.