CARL SCHMELTZER v. ST. PAUL CITY RAILWAY COMPANY.[1]

May 29, 1900.

Nos. 12,069—(139).

**Street Railway—Personal Injury—Evidence.**

    In this action, which is one to recover damages for personal injuries, the evidence is examined, and *held* insufficient to justify a finding that plaintiff's injuries were caused by the negligence of defendant.

Action in the district court for Ramsey county to recover $2,500 for personal injuries. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $300. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

Exhibit 1, referred to in the opinion, was offered in evidence by defendant on cross-examination of plaintiff's witness, Olaf Olson, who testified that it was his statement of the facts, signed by him, as to how the accident happened. The document was as follows:

1 Reported in 82 N. W. 1092.

"Q. Did you see the accident? A. Yes. Q. Where did it occur? A. Hampton Ave. & University Ave. Q. What day and what hour did this accident occur? A. June 22–99, about 6:18 p. m. Q. Where were you when it occurred? A. Waiting for the car. Q. Was the bell or gong ringing at the time? A. No. Q. Was car standing or moving? If moving, about how fast? A. Came to a stop and was standing. Q. Who do you consider to blame, and why? A. The man who fell. Q. Give full account of accident as witnessed by you. A. Three or four men were waiting for a car, and it came up, and as the car came to a stop the gates opened and Carl Schmeltzer was the one ahead of us, and he ran to jump on the car, and, instead of striking the step with his foot, he caught it with his toes and slipped off, striking his leg on the step. The car was standing when he fell, and the trainmen were in no way to blame; for we all boarded car after this, and I knew the car did not move after it came to a stop until we were all aboard. Q. What is your full name and address? A. Olaf Olson, 175 Valley Street. Works at St. Anthony Fur. Co.

"Date, Aug. 3rd, 1899."

*Munn & Thygeson,* for appellant.

*Samuel A. Anderson,* for respondent.

BROWN, J.

This action is one to recover damages for injuries to the person of plaintiff caused, as he alleges, by the negligence of the agents and servants of defendant in the management and operation of one of its street cars, on which plaintiff had taken passage. The alleged negligent act is that of suddenly starting the car as plaintiff was in the act of boarding it, thereby causing him to fall and injure his person. The plaintiff had a verdict in the court below, and defendant appeals from an order denying a new trial.

Several questions are raised in this court, but only one of them need be considered. As we conclude that the evidence is wholly insufficient to justify the verdict, we will not specially refer to any other question, except to say that we find no error in the charge to the jury. Taken as a whole, it fairly and clearly lays down correct rules of law. We may also say that, in view of the entire cross-examination of witness Olson, there was no prejudicial error in the exclusion of Exhibit 1. It is always competent and proper to offer in evidence declarations and statements made by a witness out of court which are contradictory and at variance with his sworn testi-

mony. But just when or how far conclusions of a witness, expressed by him out of court on the merits of the controversy in which he testifies as a witness, may be used in the line of impeachment, we need not determine. The question is not likely to arise on another trial.

The evidence on which plaintiff relies for a recovery is found in the testimony of his witnesses, and we quote all that is pertinent to the issue as to defendant's negligence.

The plaintiff himself testified. Direct examination:

"* * * Q. Now, state to the jury what took place at that time. Tell them so they will know just what happened to you, and what you were doing. Tell them about getting on the car, and what happened to you. Just tell it in your own way. A. Well, the gate get open, and I walk in, and the car gave a short jerk, and I was knocked down. Q. Well, where did you fall? A. On the step. Q. And which way was your head,—in the car or out? A. I was with one foot on the second step, and with the second foot on the highest step, and the car gave a jerk, and then I fell down. Q. And what, if anything, happened to you? If you were hurt where were you hurt? A. On the right leg, here."

Olaf Olson, a witness called by plaintiff, testified. Direct examination:

"* * * Q. Well, then, did you see the plaintiff fall? A. I did; yes, sir. Q. And where do you recollect that he fell? Where was he? Describe to the jury the position that he was in. A. Well, he was on— He had one foot on the top step and one on the second, and then the car happened to go back a little bit, and he had one foot on the front, and he slipped. Q. You say the car went what? A. Went back a little bit. Q. Was it a quick or slow backing, or a jerk, or how? A. Well, I guess it went pretty slow. * * * Q. Now, just describe to the jury what the car did at the time that Schmeltzer fell, as best you can. A. Well, he was the first one on— the third one on—the car, and he got up all right to the last step, and his foot got on the last step, and he slipped, and then he slipped down onto the last step. * * * Q. Well, give us the time,— the time of the jerk of the car,—as to his falling. A. Well, he did fall, and the car went back about two or three inches, and then he fell just then. * * * Q. That is all you know about the case, I believe. A. Yes, sir. Q. And you were there at the time. Did I understand you to say that, as he fell, that he slipped down again on the steps? A. Yes, sir; he slipped down to the bottom step." On cross-examination: "* * * Q. Now, you understand what I

mean by that? Didn't he sort of hurry up the step and happen to slip,—made a misstep and fell down on the step? Now, isn't that the size and truth of the whole matter? A. He never went any faster than I went. Q. No; he is an old man, and you are a young man. But isn't that the way it happened? Didn't he sort of hurry up, and make a misstep and fall down? A. Yes; he made a misstep and fell down. * * * Q. Now, you say that the car slid back two or three inches? A. Yes, sir. * * * Q. When was it? A. It was just as we was on the car. Q. How? A. It was just as we was on the step. Q. Did you feel that? A. Yes, sir. Q. How many inches did it go back? A. About two or three inches. Q. Two or three inches? A. Yes, sir. Q. That is, the car slid back, you think, two or three inches? A. Yes, sir. Q. And that was all there was to it, is it? A. Yes, sir. Q. There isn't any question in your mind but he made a misstep? You have already testified to that,—that he made a misstep and slipped, and that is why he fell? A. Yes, sir."

F. W. Atchinson, called by plaintiff, testified: Direct examination:

"* * * Q. Can you state whether or not the car at that time gave a move backward or forward, or jerked or anything? A. I didn't feel any move. Q. Do you know whether or not it did? A. I should say it did not. Q. Were you standing or sitting down? A. I was standing. Q. Right by the door, inside? A. Just on the platform. It was an open car. Q. I thought you got inside? A. I stepped around and took the rear seat. Q. But that was after he fell that you did that? A. Yes, sir; I was standing at the time I heard the fall. I just stepped on the platform."

Gottlieb Mangovius, called by plaintiff, testified: Direct examination:

"* * * A. I went after Schmeltzer. I helped him along on the car. Q. State whether you saw Schmeltzer fall. A. When Schmeltzer got on the car the car gave a jerk, and through that he fell. Q. Which way did the car jerk,—forward or back? A. Backward." Cross-examination: "* * * Q. Now, you say that this car went backwards? A. Yes, she went backwards; otherwise, the man wouldn't fall. Q. Where were you when the man fell? A. I was right near the car. * * * Q. Did you help him up? A. Yes. Q. Why did you help him? A. Why, he couldn't himself. Q. How far did that car move backward? A. I can't tell exactly. About two feet. Q. Did the gate strike against you when it moved backward? A. No. Q. How fast did the car move backward? A. Oh, very slowly. Q. Did the car back up hill? A. No; it was level."

Plaintiff offered no other evidence which has any important bearing on the question. Defendant introduced several witnesses who were passengers on the particular car, and each testified that it remained stationary and did not move at all after the gates were opened to admit passengers. We are of the opinion that giving it all the force and weight it is fairly entitled to, and construing it in connection with all the evidence and circumstances of the case, and in the most favorable light, this evidence is wholly insufficient to sustain or support a finding of negligence on the part of the defendant. Plaintiff himself made no attempt to describe the movement of the car which he claims threw him down, any further than to say that the car gave a short jerk. His witness Olson says that the car moved only two or three inches, and that it was a "pretty slow" movement. He also says that plaintiff made a misstep and fell. It seems perfectly absurd that a movement of the car the space of two or three inches could have been sufficiently violent to throw a person down, yet Olson repeats the statement several times that the car moved but two or three inches. The whole truth, in all probability, is contained in the statement of this witness to the effect that plaintiff made a misstep, and in consequence fell and injured his leg. Atchinson, who stood very near plaintiff when he fell, says that there was no movement of the car, while Mangovius says that it moved backward two feet, but very slowly. Conceding his testimony to be true, it furnishes no inference of negligence.

The evidence is so indefinite and uncertain, and the probability that the accident was caused by the alleged movement of the car so remote, that we find it our plain duty to grant a new trial. We share the respect of the learned trial judge for the jury system, and our respect therefor is only shaken or lessened when confronted with palpably unjust verdicts,—verdicts which find no support in the evidence, and can only be accounted for on the theory of bias and prejudice.

Order reversed, and a new trial granted.