WILLIAM E. HUNT v. ST. PAUL CITY RAILWAY COMPANY.
SAME v. SAME.[1]

June 5, 1903.

Nos. 13,404—(90).

**Evidence—New Trial.**

*Held*, that the evidence in a personal injury case as to the manner in which the accident occurred was not so inherently unreasonable and improbable as to require the court below to grant a new trial upon hearing an alternative motion made by defendant's counsel after a verdict in plaintiff's favor.

**Excessive Damages.**

The jurors were justified in finding from the evidence that both the hearing and eyesight of a child ten years of age were permanently injured and impaired by the accident, and that other injuries were received by her at the same time. *Held*, that a verdict in her favor in the sum of $6,000 was not excessive, under such circumstances.

Separate actions in the district court for Ramsey county,—the first by plaintiff as father of Harriet Hunt, his minor child, to recover for her benefit $15,000 for personal injuries received by her in attempting to enter defendant's street car; the second by plaintiff to recover $2,500 for the loss of services of said child resulting from the same injuries. The cases were tried together before Kelly, J., and a jury, which rendered separate verdicts in favor of plaintiff,—in the first action for $6,000 and in the second action for $1,000. From an order denying a motion for judgment notwithstanding the verdict in each case or for a new trial, defendant appealed. Affirmed.

*Munn & Thygeson*, for appellant.

*F. D. Larrabee* and *W. H. Barnet*, for respondent.

COLLINS, J.

These two actions were tried and submitted to the jury together. One of them was brought by the father of a minor daughter, about ten years of age when the accident happened, to recover

[1] Reported in 95 N. W. 312.

damages personal to himself, and the other was brought to recover damages for the benefit of the child. In the action brought by the father in his own behalf, a verdict was rendered in the sum of $1,000, and in the other the verdict in favor of the plaintiff was for $6,000. It was alleged in the complaint that, while the girl was attempting to board one of defendant's cars in the city of St. Paul, the entrance and exit gates were violently and negligently shut and closed, whereby she was caught by them upon each side of her head, receiving severe and specified injuries, from which, it was claimed, she not only suffered great pain, but that her powers of hearing and seeing had been permanently and seriously impaired. The answer admitted that while the motoneer was in the act of closing the gates the child came in contact therewith, but denied that this was the result of any negligence or fault upon his part, and also denied, upon information and belief, that she had sustained any injuries by reason thereof.

Upon the trial the child testified as to the manner in which the accident happened—that just as she put one foot upon the lower step of the car, and was leaning forward, the gates were violently and suddenly closed, whereby her head was caught upon each side just over the temples, and, further, that one of the gates struck her upon the left hip at the same time that her head was caught, as we understand it. Her mother testified that she was just behind the daughter, assisting her into the car; that she saw the gates close upon the child's head, and, as soon as possible, relieved her from the situation. She also testified that later on the child complained of an injury about the hip, and upon examination a black and blue spot was found on that part of the body. She also testified that the injuries received by the gate made a depression on each side of the child's head, and that the marks remained there for several days. There was medical testimony that marks were found upon the head several days after the accident, and about where the girl claimed that the gates struck her. There was further medical testimony, of an expert character, from which the jury had a right to conclude that there were depressions in the skull of the child, caused by the accident; and, in opposition to

89 M.—29

this, there was expert testimony from wnich the jury would have been warranted in finding to the contrary—that the depressions referred to were congenital, and had not been accidentally caused. This difference of opinion between the medical witnesses made this question one for the jury.

1. As we understand the contention of counsel for appellant, their position is that the testimony of the mother and daughter as to the method in which this accident occurred made a case so unreasonable, incredible, and unbelievable that the trial court should have at least granted a new trial in response to their alternative motion made upon a settled case. It is argued that the physical facts surrounding the accident clearly and conclusively show that the gates could not have been closed, or the child's head injured by such closing, while she was in the position described by herself and her mother in their testimony, and therefore that the claim for injuries must be wholly rejected. In support of this contention, counsel cite Messenger v. St. Paul City Ry. Co., 77 Minn. 34, 79 N. W. 583, and Schmeltzer v. St. Paul City Ry. Co., 80 Minn. 50, 82 N. W. 1092. But these cases are not decisive of the present.

In the Messenger case there was no question but that the plaintiff fell upon the ground, just outside the gates; but it was impossible to credit her statement as to the manner in which this was done, and it absolutely negatived all inferences which otherwise might have been drawn as to how she was injured. It was simply held that the plaintiff's uncorroborated evidence on the essential and vital point was so inherently improbable and unreasonable that the court below abused its discretion in refusing to grant a new trial.

In the Schmeltzer case the plaintiff claimed that he was thrown to the ground by a forward, admittedly slow, movement of a car; the witnesses differing as to distance, but fixing it from two inches to two feet. It is a matter of common knowledge that a car cannot be moved a distance of from two inches to two feet so violently as to throw a person from the step to the ground. And so it was held that the testimony was insufficient to show that defendant was negligent.

Here the testimony introduced by plaintiff did not negative all inferences as to how the accident happened which might otherwise have been drawn from the testimony—for instance, that one gate did not strike the girl's hip at the same time that both closed upon her head, nor that it was absolutely impossible that her head might be in a position where the gates could pass her arms and shoulders, and then close upon her temples.

Upon the oral argument there was brought into the courtroom by counsel a full-sized model or duplicate of a part of the car platform, of the steps leading to the platform, and of the gates, with enough of the bar and lever which is used to operate the latter to demonstrate thoroughly the manner in which the gates are opened and closed for the entrance and exit of passengers, and this model was used by counsel to aid the court in ascertaining and determining whether it would be possible for a child of this age to be caught by the head in the manner claimed. Experiments were made by counsel during the argument and subsequently, on invitation of counsel, by members of the court; and they convince us that, while accidents of this kind may be very singular and uncommon, they may happen, and that a child, or an adult, for that matter, might be caught upon the head by a sudden closing of the gates, precisely as it is claimed this child was. This would depend upon the position of the head. If thrown forward, by the person stooping over, the chances of being caught in such a way are much greater than if the party is in some other attitude.

Counsel for defendant presents two special reasons why the child could not have been injured: First, because she testified that one of the gates struck her left hip at the same time that her head was caught; and, secondly, because it was impossible for the gates to close upon her head while her mother stood immediately behind, assisting her in boarding the car.

We cannot expect that a child of the age of the one in question, or even a grown person, can tell precisely how personal injuries may have been received, or testify positively and accurately concerning things which occurred at the time, but which were merely incidental. And this accident may not have occurred just exactly as she thought. It might be possible that one of these gates

struck the girl's hip before it closed upon her head, or it might be possible that it came in contact with her hip immediately afterwards, or it might be possible that she was mistaken as to the gate striking her at all. Mrs. Hunt did not know of any blow upon the hip, except as she was told by the little girl. The plaintiff's right to recover cannot be made to depend upon strict accuracy of detail as to just how her injuries were received, for such a requirement would be unreasonable. We cannot hold, as a matter of law, that the statement of the witnesses as to the manner in which the accident occurred must be repudiated and rejected simply because the little girl thought she was struck by the gate upon the left hip at the same time her head was caught.

And we are unable to discover any merit in the contention that it was impossible for the gates to shut upon the child's head, with the mother immediately behind her, assisting her onto the car. Whether they could or not would depend entirely upon the position of the girl's head with reference to the balance of her body, and upon the nearness and position of the mother. If the head was well forward—and it must have been, to be caught by the gates—the fact that another person was close behind her would be of little importance. It would indicate nothing at all, because, to catch the head, the gates would probably pass in front of such other person, and at a few inches distance. We reiterate that, while the accident was an uncommon and singular one, we are firmly convinced from the experiments that it could have happened precisely as testified to by the child, except that she could not have been struck upon the hip and the head at the same moment.

2. It appears that up to and prior to the accident the child's physical condition had been good. This was testified to by the mother, and also by the family physician. The latter testified that up to that time there was nothing the matter with the child's hearing or eyesight, so far as he knew, and she had been his patient; that soon after that occurrence he was called to examine her, and found that not only her eyes and ears were affected; but that other organs seemed to be in bad condition. Her subsequent and present physical condition was also testified to by other medical experts, but, as is usually the case, there was much differ-

ence of opinion between the plaintiff's experts and those sworn in behalf of the defendant. Under such circumstances, a determination of this difference of opinion was for the jurors, and they were much better qualified to decide as between these disagreeing professional gentlemen than any appellate court can be. If the medical experts sworn in behalf of the plaintiff were to be believed, the child has very serious and permanently defective vision, and the use of glasses cannot remedy the difficulty, and it was also shown that she was quite deaf. And her general health is much impaired. If the mother and the family physician were truthful, nothing of this character existed prior to the accident. We do not think it can be held, upon such testimony, if it was believed by the jurors—and evidently it was—that a verdict in the sum of $6,000 in the action brought for the benefit of the child was excessive.

3. We have examined the specifications of error relating to the admission and exclusion of testimony—mostly testimony of an expert character. Nearly all of the questions propounded by plaintiff's counsel to which objections were made and overruled were perfectly proper. The same may be said as to the rulings of the court when excluding testimony offered by defendant's counsel. In nearly every instance the testimony objected to and allowed, or objected to and excluded, was thoroughly and completely covered by other proof. In any event, a critical examination of every one of these assignments of error leads us to say that it is unnecessary to particularize concerning them, and that no prejudicial error grew out of the rulings of the court below when receiving the testimony.

Our conclusion is that the order appealed from should be, and hereby is affirmed in each case.