# WILLIAM KLING v. THOMPSON-McDONALD LUMBER COMPANY.[1]

December 11, 1914.

Nos. 18,869—(114).

**Verdict sustained by evidence.**

1. It is admitted that plaintiff, a street car conductor, was injured by defendant's auto truck. He claimed that the truck ran into him while he was standing in the street adjusting the trolley upon his car. Defendant claimed, and the great preponderance of the evidence indicated that, while attempting to adjust the trolley, he fell from the platform of the car in front of the truck. The evidence is sufficient to sustain the verdict, if the accident happened in either manner, and the failure to sustain plaintiff's claim in this respect does not require a reversal.

**Motor vehicle and street car — construction of statute.**

2. The conductor of a street car is within the class of persons for whose benefit the statute requires motor vehicles to slow down, and, if "necessary for the safety of the public," to stop not less than 10 feet from a street car which is receiving and discharging passengers.

**Same.**

3. While a street car is receiving and discharging passengers, pedestrians to and from the car have the right of way, and it is the duty of an auto driver to stop, if necessary for their safety, and, if he does not stop, to exercise such care in the management of his machine as, under the circumstances, shall appear to be reasonably necessary to guard against injury to any one.

**Harmless error.**

4. There was no reversible error in the rulings of the court, or in the charge to the jury.

Action in the district court for Hennepin county to recover $10,-170 for personal injury sustained through collision with defendant's

[1] Reported in 149 N. W. 947.

Note.—The question of the duty of the driver of an automobile when near street cars is discussed in notes in 38 L.R.A.(N.S.) 493; 42 L.R.A.(N.S.) 1184, and 51 L.R.A.(N.S.) 1003.

motor truck. The facts are stated in the opinion. The case was tried before Hale, J., and a jury which returned a verdict in favor of plaintiff for $2,166. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*P. J. McLaughlin,* for appellant.

*Stan J. Donnelly & Stan Dillon Donnelly,* for respondent.

TAYLOR, C.

This is an action to recover damages for personal injuries. Plaintiff had a verdict, and defendant appealed from an order denying a motion for a new trial.

The errors assigned are: That the evidence does not sustain the verdict; that the charge to the jury was prejudicial; that two instructions requested by defendant were not given; that an objection to the admission of testimony was overruled; and that a request to submit a special question for the jury to answer was denied.

Plaintiff was the conductor of an interurban street car running between St. Paul and Minneapolis. While his car was crossing the tracks of the Chicago, Milwaukee & St. Paul Railway Co., in Minneapolis, the trolley came off the wire. The momentum of the car carried it across the tracks, and to the usual place for discharging and receiving passengers beyond such tracks, where it was brought to a stop by the motorman. Three passengers entered the car but none alighted therefrom. After the car came to a stop, plaintiff's attention was called to the fact that the trolley was off the wire. He was inside the car but hastened to the rear vestibule and, while standing upon the platform, tried to put the trolley back in place. He testified that he worked in this manner for three or four minutes without succeeding; and then stepped into the street, at the side of and facing the rear vestibule of the car, and, while in this position, had worked for two or three minutes trying to replace the trolley, when he was struck and knocked down by defendant's auto truck. He also testified that he had not seen the truck and did not know that it was approaching.

The truck was going in the same direction as the street car. It stopped at the railroad tracks, then crossed the tracks, and proceeding

slowly attempted to pass the street car which still remained stationary. The driver of the truck testified that, when he was at the railroad crossing, he saw the conductor standing upon the platform of the car trying to put the trolley in place; that when the front of the truck was about opposite the rear of the car, the conductor gave the trolley rope a jerk and, apparently losing his balance, fell from the platform in front of the truck. Of the passengers upon the street car, six were called as witnesses—two by plaintiff and four by defendant. Each of the four called by defendant testified positively that plaintiff, while attempting to fix the trolley, slipped, or lost his balance, and fell from the platform directly in front of the truck, substantially as stated by the driver. Of the two called by plaintiff, one testified that he was upon the platform; saw the conductor upon the platform trying to put the trolley in place; looked into the car for a seat, then looked back and saw the wheel of the truck shoving the conductor along the pavement. The other testified that he was upon the platform; that he stepped out of the way of the conductor who was working at the trolley; turned to go into the car; felt a jar; thought the truck struck the car; turned back and the conductor was then under the truck. Neither of them saw the conductor leave the platform, but, during the moment when they were looking elsewhere, his position was changed from that of standing upon the platform to that of lying upon the pavement against the wheel of the truck.

Plaintiff's statement that he stepped from the platform to the street and attempted to put the trolley in place while standing in the street is not corroborated by any other witness, not even by the motorman. A light rain was falling, and had been nearly all day, and both the street and the steps of the car were wet, muddy and slippery. When the car came to a stop, the gates were opened and remained open until after the accident. The truck was going very slowly. Of four witnesses who estimated the speed, none placed it above three miles per hour. Plaintiff apparently fell crosswise of the street and directly in front of the left front wheel of the truck, which struck him about midway between his hips and his shoulders. The wheel did not run over him, but pushed him along the pavement for some distance and fractured several of his ribs. The slow speed of

the truck, the way in which he fell, and the testimony of all the other witnesses, including those called by himself, render the claim that plaintiff was standing in the street, and was there run down, so improbable that, if the jury, by their verdict, necessarily found that the accident happened in that manner, a new trial should be granted under the rule applied in the following cases:   Voge v. Penney, 74 Minn. 525, 77 N. W. 422; Messenger v. St. Paul City Ry. Co. 77 Minn. 34, 79 N. W. 583; Baxter v. Covenant Mut. Life Assn. 77 Minn. 80, 79 N. W. 596; Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779; Schmeltzer v. St. Paul City Ry. Co. 80 Minn. 50, 82 N. W. 1092; Peterson v. Chicago Great Western Ry. Co. 106 Minn. 245, 118 N. W. 1016; Patzke v. Minneapolis & St. Louis R. Co. 109 Minn. 97, 123 N. W. 57; Hill v. Jones, 109 Minn. 370, 123 N. W. 927, 18 Ann. Cas. 359.

In the charge the court defined in general terms, but quite fully and correctly, the care required of an auto driver to prevent injury to others and then stated:

"The negligence which the defendant is charged with here, or the driver, is the failure to use reasonable and ordinary care; such as a reasonably prudent man would be expected to use under the same circumstances."   He then read the following paragraph from the statute:

"In approaching or passing a car of a street railway, which has been stopped to allow passengers to alight or embark, the operator of every motor vehicle shall slow down, and if it is necessary for the safety of the public, he shall bring said vehicle to a full stop not less than ten feet from said street car."

He then continued:

"That is the rule by which the defendant's conduct is to be measured in this case.   The law does not require him absolutely to stop when the gates are open, ten feet from the gates; but he is required to take that into consideration, and if it is necessary for the safety of the public, he is required to stop ten feet before he gets to the gates.

"It is claimed on the part of the plaintiff that the fact that the gates were open was a sign, an indication, to this driver or to anybody that came along, that people might be getting on or off the car.

"It is claimed on the part of the defendant that the plaintiff fell off the steps onto the ground. Now it makes no difference that he may have fallen out, so far as the liability of the defendant is concerned; that is, I mean if the driver, under the circumstances, was not using reasonable and ordinary care, such as he ought to have used under the circumstances, and because of the failure to use such reasonable and ordinary care this man was run over. A man is entitled to recover, if he falls down in a street, or if he lies down in a street; he is entitled to just as much protection as a man that stands up on the street. The only object of that evidence, that I can see, was this: That the conductor, as they claim, was not standing upon the street, therefore there was no evidence visible to the driver that the conductor was there, and that because of this he was not required to use the same care that he would have been required to use if the conductor had been, as he claims he was, standing upon the street fixing this trolley. But if the driver was not using reasonable and ordinary care under the circumstances, and the plaintiff did, as the defendant claims, fall out onto the street and was run into, then the defendant in this case is liable. There is no claim here that the plaintiff was himself guilty of negligence, or that he assumed the risk. The only question is, as I have stated, was the driver of this machine, under all the circumstances, guilty of negligence such as I have stated, and was the injury to this plaintiff the proximate result of such negligence."

After the jury had been out about three hours they returned and requested further instructions "as to the duty of the driver of an auto truck when approaching a street car with the gates open." The court responded by again reading the portion of the statute above quoted but added no comment thereto.

Defendant contends, at the outset, that the only purpose of the statute above quoted is to protect passengers while entering or leaving a street car, and that it was not intended for the benefit of the men operating the car, and does not apply in case of injury to them. We cannot give the statute such a narrow construction. It requires the auto to slow down, and, if "necessary for the safety of the public," to come to a full stop. It expresses an intention to protect, not

merely those entering or leaving the car, but the public generally, and we think the operatives upon the car are within its purview. Fairchild v. Fleming, 125 Minn. 431, 147 N. W. 434.

The statute casts upon an auto driver approaching a street car, stopped to allow passengers to alight or embark, the burden of keeping watch and taking such action as may be necessary to guard against injury to persons coming into the street. He is required to slow down, and, if necessary for the safety of the public, to stop. In effect, under such circumstances, pedestrians are given the right of way to and from the car, and the auto driver must govern himself accordingly. If he does not stop, he must exercise a high degree of care to avoid injury to those who may be, or may come, upon the street. He is not an insurer against accidents, however, and, if the roadway is clear and appears likely to remain clear, so that, apparently, he can proceed without endangering anyone, and he goes forward with due caution, and with his machine under such control as to enable him to avert any danger that could reasonably be anticipated, he is not liable for the happening of an accident which, in the exercise of reasonable caution and prudence he could not have foreseen or guarded against.

It is undisputed that plaintiff was struck and injured by the truck. If he was standing upon the street, as he claimed, and, while in plain view and engaged in replacing the trolley, was run down by the truck, defendant's negligence is clear. If he fell from the car, as the great weight of evidence indicates, whether defendant is chargeable with negligence depends upon whether the circumstances were such as to justify the driver of the truck in undertaking to pass the car, and whether in passing the car he exercised that degree of care and caution, in the operation of his machine, which, under the circumstances, appeared to be reasonably necessary for the safety of those in a position where they might suddenly come in front of the truck as it passed the car entrance. Several passengers entered the car after it stopped, but this was while the truck was back at the railroad tracks. When the truck approached the car, no one was either entering or leaving it, and no one was upon the street. The driver saw the conductor attempting to put the trolley in place, and might

reasonably have assumed, as seems to have been the fact, that the car was no longer waiting for passengers to alight or embark, but was merely waiting for the conductor to reconnect it with its source of motive power. It cannot be held that the statute makes an attempt to pass, under such circumstances, negligence *per se*. But, in attempting to pass, the driver is required to exercise such care as, under the circumstances, shall appear to be reasonably necessary to guard against injuring any one then in a position to move suddenly either toward or from the car. Plaintiff fell under the truck and, as expressed by the witnesses, was shoved along the pavement by the wheel for a considerable distance. The driver estimates it as six or eight feet. Several of the witnesses state the distance as more than half the length of the street car, which was over 40 feet long. Considering the distance which the truck ran after striking plaintiff, in connection with its slow speed and all the other facts and circumstances, it was a fair question for the jury whether the driver was exercising proper care in the management of his machine at the time of the accident, and the evidence is sufficient to sustain their verdict.

We have quoted the portion of the charge to which exceptions were taken, and have considered such portion in connection with that which preceded it, and are of the opinion that the charge, taken as a whole, submitted the case to the jury substantially in accordance with the views above expressed, and that, considered as a whole, it contains no reversible error, although, in answering the request of the jury for further instructions, the court might well have explained the duty of the driver more fully.

Defendant requested the court to instruct the jury that plaintiff could not recover, if he fell from the car upon the street in front of the truck. Conceding that the accident happened in that manner, the evidence still made a question for the jury, as already stated, and the refusal to give this instruction was correct. Defendant also requested the court to instruct that "if * * * a person of ordinary care and prudence would have attempted to pass the street car at the time and in the manner the driver of the truck in question attempted to pass," the plaintiff could not recover. This instruction

did not mention the statute, nor the duty imposed thereby upon the driver of an automobile. In view of this omission, and of the fact that the court, early in its charge, told the jury that it was the duty of the driver to use such care, "as a prudent, reasonably careful man would be expected to use under the same circumstances," and later defined the negligence charged as "the failure to use reasonable and ordinary care, such as a reasonably prudent man would be expected to use under the same circumstances," the refusal to give the instruction in the form requested did not constitute error.

It was within the discretion of the trial court to grant or refuse defendant's request to submit a special interrogatory for the jury to answer. 3 Dunnell, Minn. Digest, § 9802. It was also within the discretion of the trial court to permit plaintiff to answer the question as to whether he was married and had a family. No abuse of discretion appears.

As the evidence is sufficient to sustain the verdict, notwithstanding the rejection of plaintiff's version of the manner in which the accident happened, the order appealed from is affirmed.